**SHILLING, Admr, Etc v ROSS et**

Ohio Appeals, 2nd Dist, Miami Co

No 315.   Decided Dec 9, 1933

Leo H. Faust, Troy, and W. A. Haines, Troy, for plaintiff in error.

Jacobson & Durst, Dayton, for John J. Ross, defendant in error.

William Harry Gilbert, Troy, and U. Grant Earnest, West Milton, for Henry Hurley et, defendants in error.

### OPINION

By BARNES, J.

The above entitled cause is now being determined on proceedings in error from the judgment of the Common Pleas Court of Miami County, Ohio.

The cause originated in the Probate Court of Miami County on exceptions to the final account of Wade Shilling as administrator of the estate of Charles W. Clark, deceased. In that court the exceptions were overruled and an appeal was taken to the Common Pleas Court where the matter was heard before a foreign court sitting in place of the local Common Pleas Judge.

In the Common Pleas Court motion to dismiss appeal was overruled and the exceptions were allowed in three particulars and overruled in all others.

The administrator prosecutes error in this court from judgment of the court below overruling motion to dismiss the appeal and the sustaining of the objections on the three items.

Our first inquiry in logical order will be to consider the motion to dismiss the appeal.

The ground of the motion to dismiss was based on the claim of the administrator that there was an agreement to allow and settle the account in consideration of an early distribution and not requiring the heirs to provide bond for refund in the event any additional heirs should present themselves and establish heirship.

·The decedent, Clark was somewhat of a recluse and at the time of his death it was not known that he had any living heirs. He was never married and insofar as known had no family. It was almost a year after his death before any of the present claimants presented themselves for their share. At this time all claims against the estate had been paid with the exception of extra compensation for attorney services. Apparently there was some question raised by the heirs or possibly in the mind of the administrator as to the credits. We say this for the reason that it is claimed, and there is evidence, that the question was discussed between counsel for the administrator and attorneys representing the heirs and the claim is further made that the agreement to allow and settle the account was made with the attorneys representing the heirs.

The sole and only question raised on the motion to dismiss the appeal was whether or not there had been a valid agreement to allow and settle the account of the administrator in consideration of his recognizing the heirship of the claimants and making early distribution without requiring bond for refund. It was the claim of the administrator that the agreement was entered into with the attorneys representing the heirs. The question arose as to the authority of the attorneys to make settlement. The trial court properly held that the mere fact of the relationship of attorney and client would not authorize the settlement in controversy, unless specially authorized by the client so to do. On this question of authority the court ruled that attorneys representing the client would not be permitted to testify to detailed conversation authorizing the attorney to settle for the reason that a confidential relation existed and the conversation would be privileged. We think the court was in error in extending the rule to this length. It was not the intent of the statute (§11494 GC) to preclude the testimony of the attorney where there is an issue as to the authority of the attorney to act. In a measure this becomes a controversy between attorney and client and the adoption of such a rule would in effect require the giving of such authority to either be in writing or in the presence of some third party competent to be a witness. From the very nature of the question the rule can not apply. However, we find that counsel for motion to dismiss failed to make proper proffer of proof and hence under the well recognized rule, the error will not avail them. For this reason, we find no prejudicial error by reason of the court overruling the motion to dismiss the appeal.

However, the identical question is again raised in the introduction of evidence on behalf of the administrator. (See Record 196 to 226 inclusive). Again counsel representing the administrator attempts to present evidence of the agreement to accept or settle the account as submitted and the authority of the attorneys representing the heirs to make such settlement. Again upon objection the court refuses to permit the attorney for the acceptor Ross to testify to any conversations with his client through which it was attempted to establish that the client had authorized the attorney to accept the account as submitted. The court again stated his reason for sustaining the objection that the confidential relation existed between attorney and client and that no such testimony could be presented. In this.

instance the record was saved by making proffer of proof.

The provisions of the code covering privileged communications is to be found in §11494 GC and the heading and first subdivision reads as follows:

"Sec 11494 GC. PRIVILEGED COMMUNICATIONS AND ACTS. The following persons shall not testify in certain respects:

(1) An attorney concerning a communication made to him by his client in that relation or his advice to his client; * * * but the attorney * * * may testify by the express consent of the client * * *; and if the client * * * voluntarily testifies the attorney * * * may be compelled to testify on the same subject."

Even if the court was right in his conclusion that an attorney can not testify as to authority given by a client to make settlements, yet under the state of the record the attorney should have been permitted to testify for the reason that the client John J. Ross as appears at pages 48 and 49 of the record was inquired of and did testify that he had no conversation with his attorneys on settlement nor did he authorize him to make any settlement on the basis of a balance of $4092.66 for general distribution. This brought about a situation that would take away all questions of privilege. §11494 GC, subdivision 1, among other things says:

"If the client voluntarily testifies, the attorney may be compelled to testify on the same subject."

. The record discloses that the client did voluntarily testify and it therefore follows that it was error to not permit the attorney to testify on the same subject.

It very clearly appears from the record that the trial court was familiar with this rule, but evidently in the great mass of testimony covering several days it must have been overlooked that the client had testified on the subject. This, we think, constitutes prejudicial error and for which the cause must be remanded for further hearing.

There can be no question that the acceptor and all other heirs had a right to make the agreement as claimed by the administrator. If the client authorized his attorneys to make such an agreement it is just as binding as though he had made it personally. It was sought to show and prove that the attorney not only did make the

agreement claimed, but that he was authorized to do so by his client. This evidence should have been submitted and considered and a determination then made on all the facts. This evidence not being admitted, of course, could not and was not considered by the court and we are unable to say what the findings would have been if this evidence had not been erroneously excluded. For that reason this court can not make a determination of the issuable facts, but must remand.

In this connection, we might further say in the interests of making a final determination rather than remand for further hearing, we have considered the question as whether or not the claimed agreement would possess any infirmities which would constitute it invalid. A suggested question is whether or not it was sustained by a consideration. After a full consideration, we have concluded that the necessary element of consideration is shown.

. While it is true that the statute does not authorize an administrator to require heirs to give bond on final distributions (there is authority for bond on partial distribution) yet the administrator determines the heirs at his peril if he makes distribution on the general order of the Probate Court for distribution. This principle is announced in the case of **Henry, Executor v Doyle, Executor, 82 Oh St, page 113,** second syllabus:

"2. In such an action a general finding of a balance in the hands of the executor or administrator and an order to distribute the same according to law, is not a sufficient foundation for the action; but the specific amount, if any, due to the plaintiff must have been first fixed by a court of competent jurisdiction as provided by law."

**Sec 10848 GC** and the following sections prescribe the procedure for ascertaining the amount due and ordering its payment. We also call attention to the opinion of Judge Davis on **page 119 of 82 Oh St,** supra.

"Difficult, and sometimes intricate, questions arise in ascertaining who are distributees, or how and in what proportions the fund is to be distributed according to law. Accordingly the tribunals and the mode of procedure for ascertaining the amount due to the distributees, in case of doubt or contention, are provided in Revised Statutes, §§6195 to 6203, inclusive."

The above sections of the statute are the same as §§10849 to 10859 GC.

We also call attention to the case of **First Natl. Bank of Cadiz v Beebe, 62 Oh St, page 41, syllabus 4.**

"4. The Probate Court has not jurisdiction in making an order of distribution under §524, Revised Statutes, to determine the persons to whom distribution is to be made, and the amount going to each, but its power is exhausted in that particular when, upon final settlement of the account of the executor or administrator, it enters a general order of distribution."

Sec 524 Revised Statutes is the same as present §10492 GC.

In the instant case the administrator agreed to accept the claimants as the only and sole heirs and make early distribution provided the proffered account was accepted under which there appeared to be a balance due of $4092.66. That under this plan the administrator was yielding a substantial right is evidenced by the fact as indicated in the record that after the settlement was made another heir appeared and that the administrator was compelled to make settlement with him from his private funds. We are forced to the conclusion that the agreement, as claimed by the administrator, possessed all the elements to make it a binding contract, and when accepted by the heirs and distribution made thereunder it would preclude any further objections or exceptions to the account.

Be it understood that we are not determining whether or not any such agreement was entered into. If the acceptor did not authorize his attorney to make such agreement then the agreement did not exist, at least so far as the acceptor was concerned. Neither do we make any findings at this time as to any of the other heirs. These are all questions of fact to be determined on rehearing by the trial court.

Since the case is to go back for rehearing it may not be amiss to make some further observation in the interest of a final determination and thus if possible avoid the necessity of again coming to this court on questions now presented and which possibly may be again presented in a second review. We are unable to know at this time what the finding of the trial court may be upon the question of settlement. If it should be determined that the settlement was made as claimed by the administrator then the exceptions should be overruled without any further inquiry as to the correctness of the items in the account. If it should be determined the acceptor did not authorize settlement then the exceptions to the various items of the account would come up for rehearing. This hearing may be characterized as a de novo hearing uninfluenced by the finding of the court sustaining objections to three items of the account and overruling exceptions to all other items.

One question presented and upon which counsel representing the respective parties differed was that of burden of proof. We think this question is determined by the Supreme Court in the case of **Steward et v Barry, Admr., 102 Oh St, page 129.** The fourth syllabus reads as follows:

"4. When the correctness of a credit taken by an administrator in his account is challenged, the burden of establishing the validity of such credit is upon such administrator."

We can not see how there can be any quarrel with this rule of reasoning. The administrator through his accounts presents his stewardship and should always be in position to explain and justify the disposition of any and all moneys that come into his hands in his true capacity. To hold otherwise would be to place the burden upon the heirs to prove a negative. In many instances the heir cannot possibly know the facts upon which the administrator bases his claimed credits. The facts are peculiarly within the knowledge of the administrator and the burden should be upon him to justify his conduct in distributing the money of the estate. The trial court very properly held to the above rule. The administrator paid a number of claims presented by various persons claiming to have rendered services of various kinds to the decedent in the last few years of his life. It was determined that the administrator was not entitled to take credit for the amount paid Mr. Coate. The Coate claim as originally presented amounted to some $2000 and was settled with the administrator for $1250. The evidence presented relative to this claim was very meager. The only witnesses presented were the claimant, C. W. Coate, Mr. Shilling, the administrator and Mr. Leo R. Faust, attorney for administrator. As an exhibit was attached the verified claim of Mr. Coate in the sum of $2001. Counsel for the heir presented no evidence as contradicting the correctness of the claim except as might be found in the cross-examination of the three witnesses presented for the administrator. The record discloses that each of the three witnesses dealt in generalities but, of course, they were subjected to cross-examination and thereby as much detail could be drawn

462

out as counsel for the heir think proper. As the record stands, we have the verified account of the claimant Coate and his testimony that he had presented and sworn to a claim for the sum of $2001, that the same was just and seeks to emphasize his claim in that if it had not been he would not have sworn to it.

The attorney, Mr. Faust at pages 68 and 69 of the record says in substance that he made an investigation of this claim and felt at the time that Coate had taken care of the decedent as represented and sworn to in his claim and that he was entitled to something, but not as much as originally demanded. We do not find a syllable in the testimony disclosing any direct evidence against ,the Coate claim. We can readily see wherein there might arise a very grave suspicion as to its correctness, but we cannot think that mere suspicion is sufficient to disallow the claim. The opportunity of cross-examination could have gone to very full limits to determine details in the matter. Can anyone say in a court at law under such a state of the record, a jury would not be warranted in returning a verdict in favor of the Coate claim.

It is not the purpose of this court to determine the correctness of the Coate claim, but merely point out a conclusion that we might arrive at under a similar record.

In the matter of the allowance of funeral expenses, the court and counsel had under consideration the case in 82 **Oh St, page 190** and also the same case as found in 6 **N.P. (N.S.) page 459.** The case is very full and complete and adequately covers the questions here involved.

The question of allowance for attorneys' fees is wholly one of fact as to the service performed and their reasonable value.

Exceptions will be allowed to the acceptor. Entry may be drawn in accordance with the above facts. Costs will be detailed against the acceptor.

HORNBECK, PJ, and KUNKLE, J, concur.